## COCA et al. v. MORRIS et al.

(Circuit Court of Appeals, Seventh Circuit. April 15, 1901.)

### No. 705.

EXPORTERS—DELAY IN TRANSMISSION OF GOODS—LIABILITY—INCREASED CUSTOMS DUTIES.

Pending the passage of the Wilson tariff bill of 1894, defendant filled an order for lard at Chicago to be shipped to plaintiffs in Cuba, the goods to be delivered to the purchasers at the point of shipment, but delay, for which the defendants were in no way responsible, occurred in forwarding a part of it by vessel from New Orleans, and before it reached Havana plaintiffs had to pay duties imposed thereon by the Spanish government in retaliation for the passage of the Wilson bill, and which, but for the delay, would not have been collected. *Held*, that the risk of such a result was taken by plaintiffs, and they could not claim reimbursement from defendants therefor.

In Error to the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

This is an action by plaintiffs below, citizens of Cuba, against the defendants, citizens of Chicago, doing business at Chicago as manufacturers and dealers in lard under the firm name of Nelson Morris & Co., to recover the sum of $3,635.87 damages, being the amount of custom duties which the plaintiffs below allege that they had to pay over and above what, but for the alleged negligence of the defendants, they would have been required to pay, at Havana, upon 268 tierces of lard shipped by the defendants below to them in August, 1894. The ground of the action is the alleged negligence of Nelson Morris & Co. in not shipping the goods to reach Havana, Cuba, before the Spanish government had increased the import duties upon lard in retaliation of an act of congress known as the "Wilson Tariff Bill," which at about that time had become a law in the United States. A jury being duly waived by the parties, the action was tried before the court without a jury, and the facts in the case as they appear from the record are found and fully stated by the court in its findings in the case as follows:

"(1) That the defendants, as Nelson Morris & Co., sold to the plaintiffs, as Coca & Co., four hundred tierces of lard, which contract of sale is evidenced solely by correspondence passing between the parties; that the first order was given by Coca & Co. by cablegram on August 7, 1894, being for 200 tierces, and the second order was given in a like manner for 200 tierces on August 11, 1894; that said contract of sale was made for shipment 'C. I. & F. Havana, prompt shipment from Chicago.'

"(2) That said lard so ordered by Coca & Co. was of a special character and brand, which Coca & Co. then knew was not carried in stock by Nelson Morris & Co., but must be manufactured and made ready for shipment after receipt of the order; and that it required from eight to ten days after the order was received for these brands of lard before the same could be made ready for shipment.

"(3) That Nelson Morris & Co., immediately upon receipt of said respective orders, proceeded to manufacture said lard, and prepare same for shipment, with all reasonable promptness and dispatch, and that said lard was thereafter shipped as follows: 200 tierces on August 17, and 200 tierces on August 18, 1894.

"(4) That on August 11, 1894, and prior to the receipt by Nelson Morris & Co. of the order for said second 200 tierces of lard, Nelson Morris & Co. reserved space and transportation through the regular representative in Chicago of the Southern Pacific Company for said first 200 tierces of lard to be shipped to the plaintiffs at Havana, Cuba, over the Illinois Central Railroad, to New Orleans, Louisiana, and thence to Havana, Cuba, by the steamer of said Southern Pacific Company scheduled to sail from New Orleans August 23, 1894, at 8 o'clock a. m., which said steamer was the first available steamer by which said lard could be shipped to Havana, Cuba; that thereafter, between August 13 and August 16, 1894, Nelson Morris & Co. in a like manner reserved space and transportation for the second 200 tierces of said lard to be shipped in the same manner and on the same steamer to Havana, Cuba; that said route was the quickest route by which said shipment could be made after receipt of said orders.

"(5) That Nelson Morris & Co., pursuant with their arrangement made with said Southern Pacific Company, delivered said lard in the shipment thereof to the Illinois Central Railroad Company in Chicago, Illinois, with all freight and insurance prepaid, and billed the same through to Havana, Cuba, by way of the steamer of said Southern Pacific Company from New Orleans, Louisiana, and received from said Illinois Central Railroad Company bills of lading showing said lard to be consigned to 'Morris & Co., notify Coca & Co., Havana, Cuba, care of Morgan Steamship Line from New Orleans'; and that thereupon Nelson Morris & Co., through arrangement previously made with Coca & Co.. issued a sight draft upon Coca & Co. to Mueller, Schall & Co., who were the New York bankers and agents of Coca & Co., for the purchase price of said lard, and attached to said draft said bills of lading indorsed in blank by said Nelson Morris & Co. to be delivered to said Coca & Co. upon payment of said draft; that said draft was thereafter paid by said Mueller, Schall & Co., and said bills of lading, indorsed as aforesaid, delivered to said Mueller, Schall & Co. on August 20, 1894.

"(6) That said Illinois Central Railroad Company and said Southern Pacific Company were at said time common carriers, and that Nelson Morris & Co. furnished to said Illinois Central Railroad Company, on August 17 and 18, 1894, and to said Southern Pacific Company on August 20, 1894, by telegram and letter, full shipping instructions and all necessary information in detail in ample time for the proper billing of said lard, and for obtaining all necessary certificates for the shipment of said lard by said steamer, scheduled to sail on August 23, 1894.

"(7) That the scheduled time for the trains of said Illinois Central Railroad Company, upon which said lard was shipped from Chicago to New Orleans, was at said time 55 hours; that two cars of said lard, containing 133 tierces, arrived at New Orleans on August 20, at 6:50 o'clock a. m.. and were delivered to the Southern Pacific Company at 8:20 a. m., August 21, 1894; that three cars of said lard arrived at New Orleans on August 21, 1894, at 8:15 o'clock

107 F.—44

a, m., and were placed by the Illinois Central Railroad Company on the Southern Pacific Company's tracks, and tendered to the · Southern Pacific Company at 8:40 o'clock a. m. on the same day; that the remaining one car arrived at New Orleans at 11:30 o'clock p. m., August 21, 1894, and was not tendered by the Illinois Central Railroad Company to the Southern Pacific Company because said Southern Pacific Company refused to accept the three cars last tendered.

"(8) That said Southern Pacific Company sent the steamer scheduled to leave on August 23d forward direct to Havana at 1:50 p. m. on August 22d, instead of at the time it was scheduled to sail; that said 400 tierces of lard arrived at New Orleans in ample time to have been loaded upon said steamer prior to the time of its sailing on August 24, 1894; that Nelson Morris & Co. had no notice that said steamer would or might sail before its scheduled time; that it was not the custom of said Southern Pacific Company to send its steamers forward ahead of scheduled time, unless all freight contracted for had been put on board.

"(9) That said Southern Pacific Company, without the fault of Nelson Morris & Co. in any respect, refused to receive on board said steamer 268 tierces of said lard, and that there was no other means by which said lard could have been shipped to Havana prior to September 1, 1894.

"(10) That the remaining 268 tierces of said lard went forward to Havana on the next steamer of said Southern Pacific Company, which sailed on September 1, 1894, except one tierce thereof, which was not sent forward until a later steamer, and that by reason of the failure of said carriers to forward said lard on said steamer which sailed on August 22, 1894, Coca & Co. were required to pay to the Spanish government, through its custom-house officers at Havana, the sum of $3,635.87 as custom duties upon said 268 tierces of lard, which duties said Coca & Co. would not have been required to pay had said lard gone forward on said steamer which sailed on August 22, 1894.

"(11) That on August 15, 1894, the United States congress passed a bill known as the 'Wilson Tariff Act,' and that thereupon said bill went into the hands of the president of the United States for its approval; that the president of the United States did not approve said bill, but the same became a law without his approval on August 27, 1894; that the Spanish government thereupon, as a retaliatory measure, placed duties on certain American products, including lard; and that the duties paid upon the 268 tierces of lard in question by Coca & Co. were the result of the Spanish duties imposed as aforesaid.

"(12) That the contract of sale of the lard in question was not made in contemplation of any change in Spanish duties upon American products, and that the parties to said contract were not informed of any possible change in said tariff schedules until after the lard in question had been shipped by Nelson Morris & Co. and had arrived at New Orleans; that none of the correspondence by which the sale of said lard was consummated contained any reference to or mention of possible tariff changes, either in the United States or Cuba.

"(13) That the term 'C. I. & F. Havana,' used in said contract, was one of recognized meaning in that trade, namely, that the price quoted includes the cost of the merchandise, marine insurance, and freight charges to Havana, Cuba; and that the term 'Havana,' as a part of said phrase, is merely descriptive of what freight and insurance is to be prepaid; that such contract, according to the custom of export shippers in Chicago, means that the goods are to be delivered to the purchaser at the point from which shipment is made."

And as conclusions of law thereupon the court found that the defendants, Nelson Morris & Co., were not in any manner liable or responsible for the failure of said goods to arrive in Havana prior to the change of the Spanish tariff schedules, and that the defendants, Nelson Morris & Co., were not liable for any damages or losses sustained by the plaintiffs on account of said tariff changes.

Otto Gresham, for plaintiff in error.

Augustus Binswanger, for defendant in error.

Before WOODS and GROSSCUP, Circuit Judges, and BUNN, District Judge.

Upon the foregoing statement of facts BUNN, District Judge, delivered the opinion of the court.

The facts in this case are found by the court below, and cannot be reviewed here. The record shows very little conflict in the testimony, which fully supports the findings of the court. We think also that the conclusions of law are also fully sustained by the findings of fact, and that there is no error in the record for which the judgment can be reversed. The defendants in error did all they could to manufacture and ship the lard as soon as was possible, and by the first proper conveyance, and are not responsible for their not reaching Havana before some conceivable new tariff law might be enacted by the Spanish government in retaliation of a high tariff law passed by our congress. There is no evidence on the subject, and it is hardly possible that such a ground of damages could have entered into the contemplation of the parties when the contract was entered into. The Wilson tariff act, levying somewhat higher duties upon sugar and some other products imported from Cuba into the United States, was passed by both houses of congress, after a joint conference, on August 15, 1894. On the same day Nelson Morris & Co. shipped 200 tierces of lard, the second shipment being on the following day. The bill went to the president, and was retained by him without either signing, vetoing, or returning it to congress until August 27th, when it became a law by force of the constitutional provision provided for such cases. In the meantime the goods had passed beyond control of the defendants, and were on their way to Havana, but did not, all of them, reach there until after the duties on lard had been raised by the action of the Spanish authorities. The goods being en route at the time the Spanish law was passed, the presumption would be that the new rates would not apply; but, however that might be, it seems clear that no such consequence could have reasonably entered into the minds of the parties when the order for shipment was made. The goods were shipped from Chicago on the 17th and 18th of August,—nearly two weeks before the Spanish duty was imposed. No one could know then that the Wilson bill would become a law, much less could it be known or contemplated that, if it did become a law, in consequence of it the Spanish government would retaliate so quickly by imposing a higher duty upon lard imported from the United States. The damages claimed did not result from any act of the plaintiffs below, and, even if it could be so considered, they are too remote to come within the rule, which is general, that a person is not to be held responsible in damages for the remote consequences of his act, or, indeed, for any but those which are proximate or natural. 8 Am. & Eng. Enc. Law (2d Ed.) p. 561, and cases cited.

The damages claimed in the case are not only not the proximate consequence of any act done by the plaintiffs below, but they are highly speculative in character. When the contract was made, the chance that any such result would follow as the effect of the passage of tariff laws in the two countries was highly remote, and, whatever

it might have been, must be considered as taken by the persons ordering the goods. Besides this, the finding of the court exonerates the defendants in error from all fault or negligence, and places the responsibility upon the steamship company, which refused to receive the lard on board until the next sailing, which was a week later; so that, whatever damages were sustained by the plaintiffs in error, they were not in any just sense the result of any act of the defendants in error. The judgment of the court below is affirmed.